Darryl ROUSE, Charles Brooks, Stephen Jankowski, Julio Baez, and Robert Kammerer, on behalf of a class of themselves and others similarly situated, Plaintiffs,

v.

William PLANTIER, William H. Fauver, Dr. Robert Cardinale, Dr. Narsimha Reddy, Elaine Allen, R.N., John Doe, and Jane Roe, Defendants.

No. Civ.A. 90–3511.

United States District Court, D. New Jersey.

Feb. 9, 1998.

Lawrence S. Lustberg, Mark A. Berman, Gibbons, Del Deo, Dolan, Griffinger & Vecchione, P.C., Newark, NJ, for plaintiffs, Darryl Rouse, Charles Brooks, Stephen Jankowski, Julio Baez, and Robert Kammerer.

Peter Verniero, Attorney General of New Jersey, Jeffrey J. Miller, Assistant Attorney General, E. Jayroe Wurst, Deputy Attorney General, William P. Flahive, Deputy Attorney General, Richard J. Hughes Justice Complex, Division of Law, Fedcor Section, Trenton, NJ, for defendants, William Plantier, William H. Fauver, Dr. Robert Cardinale, Dr. Narsimha Reddy, and Elaine Allen, R.N.

## OPINION

ORLOFSKY, District Judge.

Following this Court's decision granting in part and denying in part Defendants' motion for summary judgment, *see Rouse v. Plantier*, 987 F.Supp. 302 (D.N.J. 1997) (hereinafter *Rouse III* ), Plaintiffs, representatives of a class of insulin-dependent diabetics incarcerated at the Adult Treatment and Diagnostic Center ("ADTC") in Avenel, New Jersey, and Defendants, doctors, a nurse, and prison officials with responsibilities at ADTC, have cross-moved for reargument of certain aspects of the Court's Opinion and Order. Defendants have moved for reargument on the question of qualified immunity, claiming that the rights asserted by Plaintiffs were not "clearly established" and, therefore, that Defendants could not be expected to conform their behavior to that standard, thereby entitling them to the defense of qualified immunity. Plaintiffs have moved for reargument with respect to their claim under the Americans with Disabilities Act, 42 U.S.C. §§ 12101 *et seq.*, arguing that their claim for injunctive relief survives the grant of a motion for summary judgment on the question of whether Defendants are entitled qualified immunity. Therefore, Plaintiffs argue, the Court should consider, and deny, Defendants' motion for summary judgment as to the ADA claim, as originally argued in their opposition to Defendants' motion for summary judgment.

Finally, Defendants argue, in the alternative, that the denial of Defendants' motion for summary judgment on qualified immunity is immediately appealable as a "final decision[ ]" within the meaning of 28 U.S.C. § 1291. In response, Plaintiffs appear not to dispute the appealability of the Court's decision, although they note, without elaboration, that the right to appeal is "questionable." Rather, Plaintiffs assert that the appeal

should be certified as frivolous, thereby allowing the trial to continue, without regard to the transfer of jurisdiction to the Court of Appeals upon the filing of a notice of appeal. Plaintiffs also argue that Defendants waived the defense of qualified immunity.

For the reasons set forth below, Defendants' motion for reargument will be denied and Plaintiffs' motion for reargument will be granted in part. Defendants' motion for summary judgment as to Plaintiffs' claim under the ADA will be denied. Also, Plaintiffs' motion for certification of Defendants' appeal as frivolous will be denied. Finally, the Court is unable to conclude that the defense of qualified immunity has been waived and, to this extent, Plaintiffs' motion for reargument will be denied.

## I. Facts and Procedural History

The facts and procedural history of this action, now pending for nearly seven and a half years, are set forth in detail in the Court's earlier Opinion. *Rouse III,* 987 F.Supp. 302, 303–06. In that Opinion and Order, I denied Defendants' motion for summary judgment on liability for Plaintiffs' Eighth Amendment claims as to Defendants, William Plantier ("Plantier"), Dr. Robert Cardinale ("Dr.Cardinale"), Dr. Narsimha Reddy ("Dr.Reddy"), and Elaine Allen, R.N. ("Nurse Allen"), and granted Defendants' motion for summary judgment on liability for Plaintiffs' Eighth Amendment claims as to Defendant, William H. Fauver ("Fauver"). I also denied Defendants' motion for summary judgment based upon the defense of qualified immunity on Plaintiffs' Eighth Amendment claims as to Defendants, Plantier, Dr. Reddy, Dr. Cardinale, and Nurse Allen, and dismissed the defense as moot as to Defendant, Fauver. Finally, I granted Defendants' motion for summary judgment based upon the defense of qualified immunity on Plaintiffs' claims under the Americans with Disabilities Act, 42 U.S.C. § 12101 *et seq.* (the "ADA"), as to all Defendants and, without considering the merits, dismissed as moot Defendants' motion for summary judgment as to liability on Plaintiffs' claims under the ADA as to all Defendants. *See Rouse III,* 987 F.Supp. 302, 317 & *passim.*

In that Opinion, I also noted the problems that the named Plaintiffs may encounter in serving as class representatives. *Id.* at 303 n. 2, 316. These problems are compounded by the suicide on December 29, 1997, of Darryl Rouse, one of the class representatives and the individual who began the prosecution of this action back in September, 1990.

The Court may exercise jurisdiction over Plaintiffs' claims pursuant to 28 U.S.C. §§ 1331, 1343(a)(3–4).

## II. Standard of Review on Motion for Reargument

Plaintiffs' and Defendants' cross-motions for "reconsideration," which I shall treat as motions for reargument, are governed by Rule 7.1(g) of the Local Civil Rules for the District of New Jersey, formerly General Rule 12I. Rule 7.1(g) provides that a party may, within ten days of the entry of an order adverse to that party, move for reargument, upon a showing that dispositive factual matters or controlling decisions of law were overlooked by the court in reaching its prior decision. *See, e.g., Damiano v. Sony Music Entertainment, Inc.,* 975 F.Supp. 623, 633–34, (D.N.J. 1996).

The word "overlooked" is the operative term in the Rule. *See* Allyn Z. Lite, *New Jersey Federal Practice Rules* 86 (1996 & Supp.1997). Mere disagreement with a decision of the district court should normally be raised through the appellate process and is inappropriate on a motion for reargument. *See Bermingham v. Sony Corp. of America, Inc.,* 820 F.Supp. 834, 859 n. 8 (D.N.J.1992), *aff'd mem.,* 37 F.3d 1485 (3d Cir.1994); *G–69 v. Degnan,* 748 F.Supp. 274, 275 (D.N.J.1990) ("A party seeking reconsideration must show more than a disagreement with the Court's decision, and 'recapitulation of the cases and arguments considered by the court before rendering its original decision fails to carry the moving party's burden.' ") (citation omitted); *Florham Park Chevron, Inc. v. Chevron, U.S.A., Inc.,* 680 F.Supp. 159, 163 (D.N.J.1988). Only where matters were overlooked and which, if considered by the Court, might reasonably have resulted in a different conclusion, will the Court entertain

such a motion. *See, e.g., Pittston Co. v. Sedgwick James of New York, Inc.,* 971 F.Supp. 915 (D.N.J.1997); *Panna v. Firstrust Sav. Bank,* 760 F.Supp. 432, 435 (D.N.J.1991); *Pelham v. United States,* 661 F.Supp. 1063, 1065 (D.N.J.1987).

█ A motion for reargument "is an *extremely limited* procedural vehicle" and may not be used to expand the record before the court. *Resorts Int'l, Inc. v. Greate Bay Hotel & Casino,* 830 F.Supp. 826, 831 (D.N.J. 1992) (Gerry, J.) (emphasis added). Finally, relief under the rule is granted "very sparingly." *Maldonado v. Lucca,* 636 F.Supp. 621, 630 (D.N.J.1986).

█ While the rule requires that matters have been "overlooked" in order to grant a motion for reargument, unfortunately, even where the Judges of this District have explicitly considered a party's argument or explicitly considered a certain fact, motions for reargument have become quite the matter of course within the District. Not only are such motions not a substitute for the appellate process, such motions are not an opportunity to argue what could have been, but was not, argued in the original set of moving and responsive papers. Similarly, such motions are *not* an opportunity for the parties to avail themselves of additional briefing, that is, to circumvent the Local Rules regarding the size and length of briefs. *See, e.g.,* Rule 7.2(b) of the Local Civil Rules for the District of New Jersey. In short, the initial motion is the "main event," not a "tryout on the road" to a motion for reargument. *Cf. Freytag v. Commissioner of Internal Revenue,* 501 U.S. 868, 895, 111 S.Ct. 2631, 115 L.Ed.2d 764 (1991) (Scalia, J., concurring in part and concurring in judgment) (citing *Wainwright v. Sykes,* 433 U.S. 72, 90, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977), and noting that "[t]he very word 'review' presupposes that a litigant's arguments have been raised and considered in the tribunal of first instance.").

## III. Discussion

### A. Qualified Immunity

Defendants have moved for reargument on the question of qualified immunity, claiming that they "could not have been aware ... that the care that was provided was somehow constitutionally deficient." Brief in Support of State Defendants' Motion for Reconsideration 2 (dated Jan. 12, 1998) (hereinafter Defendants' Reconsideration Brief). Their brief in support of their motion for reargument implies that this was the gist of their original argument, the suggestion being that they are now providing only a summary of the original brief. The original brief, however, addressed the issue of whether the rights asserted by Plaintiffs were "clearly established" in no more depth than a one-sentence assertion at the end of several paragraphs of a summary of the basic law of qualified immunity. *See* Defendants' Amended Brief in Support of Defendants' Motion for Summary Judgment 31 (dated Oct. 11, 1997) (hereinafter Defendants' Brief). Indeed, except for two additional sentences, even the over-sized brief which Magistrate Judge Cavanaugh refused to allow Defendants to file, *see Rouse, et al. v. Plantier, et al.,* Civil Action No. 90–3511, Order (D.N.J. Sept. 19, 1997) (Cavanaugh, M.J.), did not discuss the issue of qualified immunity in any more depth than the one-page argument in the Amended Brief, almost all of which was a basic summary of current law. *Compare* Brief in Support of Defendants' Motion for Summary Judgment 52–53 (dated August 15, 1997) *with* Defendants' Brief at 31; *see also* Defendants' Reply Brief in Support of Defendants' Motion to Dismiss 14–15 (dated Sept. 19, 1997) (hereinafter Defendants' Reply Brief). Thus, at the outset, I note that in their original moving papers, Defendants, for one reason or another, chose not to include all the arguments which they have now put forth in support of their motion for reargument.[1]

---

1. One can speculate that either Defendants changed their minds about the strength of their argument regarding qualified immunity between the time of the original briefing and now, or they have seized upon qualified immunity as the only means to appeal immediately the Court's earlier ruling. *See Acierno v. Cloutier,* 40 F.3d 597 (3d Cir.1994) (overruling *Prisco v. United States Dep't of Justice,* 851 F.2d 93 (3d Cir.1988), *cert. denied,* 490 U.S. 1089, 109 S.Ct. 2428, 104 L.Ed.2d 985 (1989), and holding that denial of qualified immunity is immediately appealable, even where

Relying substantially on *In re City of Philadelphia Litig.*, 49 F.3d 945, 961 (3d Cir.), cert. denied, 516 U.S. 863, 116 S.Ct. 176, 133 L.Ed.2d 116(1995), a case not cited in either their original, over-sized, or reply briefs in support of their motion for summary judgment, Defendants now argue that the Court articulated the right asserted by Plaintiffs at too abstract a level of generality. This argument was specifically rejected by the Court. *See Rouse III*, 987 F.Supp at 312–13, n. 10. Once again, I reject this argument a second time for the reasons stated in the Court's original opinion.

■ The level of generality at which the right asserted must be "clearly established" is the key conceptual issue in many qualified immunity cases, and has been clearly articulated by Plaintiffs, *see* Plaintiffs' Letter–Brief 6 (dated Jan. 20, 1998) (hereinafter Plaintiffs' Letter–Brief). The rule seemingly proffered by Defendants, however, would require a controlling judicial opinion with near exact congruity with a plaintiff's case. Such a rule is not only impracticable, and would not only expand qualified immunity far beyond its current boundaries, it would also do violence to the Supreme Court's dictate that "for a right to be clearly established it is not necessary that the very action in question have previously been held unlawful." *Anderson v. Creighton*, 483 U.S. 635, 640, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987); *see generally* Erwin Chemerinsky, *Federal Jurisdiction* 476–81 (2d ed 1994) (discussing difficulties in administering *Harlow v. Fitzgerald*, 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982), and *Anderson*).

■ Defendants have failed to present any dispositive facts or law which the Court overlooked and, notwithstanding their string citation of numerous cases in which diabetic prisoners failed to prevail on Eighth Amendment claims, *see* Defendants' Reconsideration Brief at 14–19, Defendants offer little more than a lengthy exegesis of their disagreement with the Court's original holding. The proper place for such arguments is on a motion for summary judgment and, should a party chose to appeal, in the Court of Appeals, not on a motion for reargument. Accordingly, Defendants' motion for reconsideration will be denied.[2]

## B. ADA

### 1. Injunctive Relief and Money Damages

■ Plaintiffs' motion for reconsideration presents a substantially different story. Plaintiffs have properly noted that the defense of qualified immunity protects officials from money damages, but not from injunctive relief. *See, e.g., Behrens v. Pelletier*, 516 U.S. 299, 116 S.Ct. 834, 841–42, 133 L.Ed.2d 773 (1996); *Pulliam v. Allen*, 466 U.S. 522, 541–42, 104 S.Ct. 1970, 80 L.Ed.2d 565 (1984) (judicial immunity not a bar to prospective injunctive relief); *Burnham v. Ianni*, 119 F.3d 668, 673 n. 7 (8th Cir.1997); *Keenan v. Hall*, 83 F.3d 1083, 1093 (9th Cir.1996); *W.B. v. Matula*, 67 F.3d 484 (3d Cir.1995); *Ying Jing Gan v. City of New York*, 996 F.2d 522, 535 (2d Cir.1993); *Cagle v. Gilley*, 957 F.2d 1347, 1349 (6th Cir.1992); *American Fire, Theft & Collision Managers, Inc. v. Gillespie*, 932 F.2d 816, 817 (9th Cir.1991) (explaining rationale for treating injunctive relief and

---

Plaintiff demands injunctive relief). Although an immediate appeal may be permissible under Third Circuit law, it will result in an unconscionable delay of the trial of this seven and a half year old case. This additional delay is particularly troublesome in light of the fact that Defendants had at least several years to evaluate the potential success of a qualified immunity defense. *See Rouse III*, 987 F.Supp. 302, 313–14.

**2.** Defendants have also noted that it was Dr. Cohen, not Dr. Ryan, who would not cite support for the standards Dr. Cohen and Plaintiffs advocate. *See* Defendants' Reconsideration Brief at 3. I agree. The Court, while citing the correct

pages in Defendants' brief and reply brief, merely transposed in one footnote the names of Plaintiffs' and Defendants' experts. *See Rouse III*, 987 F.Supp. at 308 n. 7. The point was that the report of Dr. Ryan, Defendants' expert, only meekly supports Defendants' argument for reasons already stated, so meekly that any standard which could be gleaned from his expert report could be termed a "standard," *i.e.*, with much irony. The point was also that the overcautiousness, if any, of Plaintiffs' expert, Dr. Cohen, was not particularly significant since the standard derived from his much more comprehensive expert report was only an aid in determining society's prevailing norms.

money damages differently for purposes of qualified immunity defense); *Newman v. Burgin,* 930 F.2d 955 (1st Cir.1991); *Yaron v. Township of Northampton,* 1989 WL 100920, *5 (E.D.Pa. Aug. 29, 1989), *aff'd mem.,* 908 F.2d 965 (3d Cir.1990); *G–69 v. Degnan,* 745 F.Supp. 254, 264 (D.N.J.1990).

In their original brief in opposition to the motion for summary judgment, Plaintiffs advanced this proposition in a short footnote to their brief and cited *Armstrong v. Wilson,* 124 F.3d 1019, 1025–26 (9th Cir.1997), *petition for cert. filed,* 66 U.S.L.W. 3308 (Oct. 20, 1997), a case dealing with *sovereign,* not qualified, immunity, and then again fleetingly at the end of oral argument. *See* Plaintiffs' Brief in Opposition to Defendants' Motion for Summary Judgment 34 n. 14 (dated Sept. 8, 1997) (hereinafter Plaintiffs' Brief). The practice of "burying" critical arguments in footnotes is not favored in this Court. Defendants apparently agree with Plaintiffs on this point and do not oppose Plaintiffs' motion for reargument on this basis. Defendants agree that their motion for summary judgment on the ADA claims should be considered on the merits. *See* Letter from William P. Flahive (dated Jan. 16, 1998).

■ The fact that Plaintiffs' claim under the ADA would survive the Court's decision granting summary judgment to Defendants on the issue of qualified immunity was overlooked by the Court. Because Plaintiffs have demanded injunctive relief, in addition to money damages, the motion for summary judgment as to injunctive relief should not have been dismissed as moot. To this extent, the motion for reargument will be granted. The Court will therefore consider the merits of Defendants' motion for summary judgment under the standards of review of a motion for summary judgment enunciated in *Rouse III,* 987 F.Supp. 302, 305–07.

### 2. Merits of Defendants' Motion for Summary Judgment on Plaintiffs' ADA Claim

Defendants contend that they are entitled to summary judgment on Plaintiffs' claim for injunctive relief under the ADA for a number of reasons.

■ First, Defendants claim that the ADA does not apply to state prisons "for the reasons cited by the court finding that the ADA does not apply to prisons." Defendants' Brief at 38. This argument has no merit in light of the Third Circuit's unambiguous holding that the ADA applies to state-operated correctional facilities, such as ADTC, a holding of which Defendants are aware. *Yeskey v. Commonwealth of Pennsylvania Dep't of Corrections,* 118 F.3d 168, 172 (3d Cir.1997), *cert. granted,* —— U.S. ——, 118 S.Ct. 876, 139 L.Ed.2d 865 (1998).[3]

■ Next, Defendants claim that there is no genuine issue of fact as to Plaintiffs' disability. This position is without merit. A disability is, *inter alia,* "a physical or mental impairment that substantially limits one or more of the major life activities of such individual." 42 U.S.C. § 12102(2)(A). An impairment is not defined within the ADA, but courts have noted that an impairment must be "significant, and not merely trivial," *see Sutton v. United Air Lines, Inc.,* 130 F.3d 893, 1997 WL 732520, *4 (10th Cir. Nov. 26, 1997), in order to "substantially limit [a] major life activit[y]." While it may be that no condition is a disability *per se* and that determinations of disability should be made on a case-by-case basis, *see, e.g., Chandler v. City of Dallas,* 2 F.3d 1385, 1391 (5th Cir.1993), *cert. denied,* 511 U.S. 1011, 114 S.Ct. 1386, 128 L.Ed.2d 61 (1994); *but see* H.R.Rep. No. 101–485(II) at 52 (1990), *reprinted in* 1990 U.S.C.C.A.N. 267, 334 ("noting that persons with impairments, such as epilepsy or diabetes, which substantially limit a major life activity are covered under the first prong of disability"), in this case, it is quite clear that there is a genuine factual dispute regarding the disabilities of Plaintiffs. Plaintiffs may be substantially limited in the foods they can eat, Plaintiffs may also be substantially limited in the exercise regime which they can engage in and, perhaps most importantly, by the numerous special complications diabetes presents for them.

---

**3.** State sovereign immunity from suit under the     ADA is abrogated by 42 U.S.C. § 12202.

*See, e.g.,* Plaintiffs' Exh. 8, Exh. 3 (detailing Rouse's lack of mobility, foot problems, paresthesia caused by diabetes); Exh. 9 (detailing severe limitations on Brooks' mobility and heart condition caused by lack of treatment of diabetes); Exh. 10 (detailing Baez's limited vision and heart condition caused by diabetes); Exh. 11 (detailing Kammerer's vision problems and general weakness and dizziness caused by or related to diabetes). Also, if Plaintiffs' conditions were considered "without regard to mitigating measures such as medicines, or assistive or prosthetic devices," it is quite clear that Plaintiffs could be considered disabled under the ADA. *See Matczak v. Frankford Candy & Chocolate Co.,* 133 F.3d 910, 1997 WL 764904 (3d Cir. Nov.18, 1997) (discussing EEOC guidelines and legislative history regarding role of mitigating measures in determining whether person has disability). Accordingly, Plaintiffs have satisfied their burden in opposing summary judgment.

■ Third, Defendants claim that there is no genuine issue of material fact that Plaintiffs were excluded from participation in any prison service, program or activity. Plaintiffs, however, have come forward with evidence that Defendants either directly or indirectly, *i.e.,* by failing to adequately treat their diabetes and the complications thereof, excluded Plaintiffs from participating in prison programs. *See, e.g.,* Plaintiffs' Exh. 8–12. Also, Plaintiffs could still prove that they were "denied the benefits of the services, programs, or activities of [ADTC], or be subjected to discrimination by [ADTC]." 42. U.S.C. § 12132. Defendants do not argue that Plaintiffs were not denied the benefits of adequate medical care or subjected to discrimination on the basis of their disability.

Finally, relying on *Bryant v. Madigan,* 84 F.3d 246 (7th Cir.1996), Defendants contend that "failure to provide adequate medical care to a disabled prisoner does not constitute discrimination against the disabled." Defendants' Brief at 32. Unlike the plaintiff

in that case, who claimed merely that he was not provided medical care, Plaintiffs may very well be able to prove that they were not afforded the benefits and services of ADTC that were generally available to others, or that they were subjected to discrimination; Defendants have not suggested otherwise. Accordingly, for the reasons set forth above, Defendants are not entitled to summary judgment and their motion will be denied.

**C. Appealability of Denial of Qualified Immunity**

■ In support of their argument that the Court's Order regarding qualified immunity is appealable, Defendants assert that they plan to appeal the question of whether Plaintiffs' right to adequate medical care was "clearly established." *See* Defendants' Reconsideration Brief at 23. To the extent this is a purely legal question, it would be immediately appealable as a "final decision" under the collateral order doctrine. *See Mitchell v. Forsyth,* 472 U.S. 511, 105 S.Ct. 2806, 86 L.Ed.2d 411 (1985); *see, e.g., Diaz v. Martinez,* 112 F.3d 1, 3 (1st Cir.1997); *Grant v. City of Pittsburgh,* 98 F.3d 116, 120 (3d Cir.1996); *Salim v. Proulx,* 93 F.3d 86, 89 (2d Cir.1996) (discussing types of rulings which are appealable after *Johnson v. Jones,* 515 U.S. 304, 115 S.Ct. 2151, 132 L.Ed.2d 238 (1995), and *Behrens* ) (Newman, C.J.).[4]

**1. Frivolousness of Defendants' Appeal**

■ Plaintiffs do not dispute the appealability of a purely legal question, although they note that the "right to appeal ... is questionable." Plaintiffs' Letter–Brief at 13. Instead, they contend that any appeal should be certified as frivolous. As the Supreme Court noted in *Behrens,* "[t]his practice, which has been embraced by several Circuits, enables the district court to retain jurisdiction pending summary disposition of the appeal, and thereby minimizes disruption of the ongoing proceedings." *Behrens,* 116 S.Ct. at 841. The Circuits which have

---

4. After the Court's original Opinion and Order, Defendants notified the Court that they planned to appeal the decision regarding qualified immunity. After bringing *Johnson* and *Behrens* to their attention, Defendants formulated this "purely legal question" for appeal. *See* Defendants' Reconsideration Brief at 23. I question how "pure" a legal question Defendants' appeal actually involves, if, as they appear to claim, they could not have formulated that question prior to discovery. *See* Defendants' Reconsideration Brief at 25 n.*.

adopted this practice have recognized that an appeal of a denial of qualified immunity, which normally divests the district court of jurisdiction over those issues involved in the appeal, may be used for tactical reasons unrelated to the merits of an action, usually the goal of creating unnecessary delay. *See, e.g., Apostol v. Gallion,* 870 F.2d 1335, 1338–39 (7th Cir.1989) (Posner, J.). These Circuits have reasoned that a frivolous appeal is a "nullity" and does not engage the jurisdiction of the court of appeals, except where the court of appeals, upon motion, stays a trial. *See, e.g., Chan v. Wodnicki,* 67 F.3d 137, 139 (7th Cir.1995) (Posner, C.J.). Some of these Circuits have also required that district courts support their conclusions of frivolity with written findings. *See, e.g., Stewart v. Donges,* 915 F.2d 572, 577 (10th Cir.1990). Finally, the Third Circuit has utilized the "frivolity" exception to bar a defendant from delaying a criminal trial by taking a frivolous interlocutory appeal of a district court decision that he or she was not subjected to double jeopardy. *See United States v. Leppo,* 634 F.2d 101 (3d Cir.1980); *see, e.g., Death Row Prisoners of Penn. v. Ridge,* 948 F.Supp. 1282, 1285–86 (E.D.Pa.1996); *Dellorfano v. Lansing,* 1996 WL 278804, *3 (E.D.Pa. May 16, 1996); *Foy v. Court of Common Pleas of Phila. Cty,* 1994 WL 115973, *2 (E.D.Pa.1994).

■ However, I need not decide whether to extend the application of the "frivolity exception" from the denial of a double jeopardy claim to the denial of a claim of qualified immunity. *See Forsyth,* 472 U.S. at 525 (comparing rights at stake in immunity and double jeopardy contexts and citing *Abney v. United States,* 431 U.S. 651, 97 S.Ct. 2034, 52 L.Ed.2d 651 (1977)); *Chuman v. Wright,* 960 F.2d 104, 105 (9th Cir.1992); *Apostol,* 870 F.2d at 1339 (noting "free[ ] transferab[ility]" between double jeopardy claims and qualified immunity contexts). Even assuming, *arguendo,* the propriety of such an extension of the "frivolity exception," I cannot say that Defendants' appeal is frivolous, that is, that

the appeal "lacks any 'colorable arguments' in its favor or is 'totally without merit.'" *Northeast Women's Center, Inc. v. McMonagle,* 939 F.2d 57, 70 (3d Cir.1991); *see also Sun Ship, Inc. v. Matson Navigation Co.,* 785 F.2d 59, 64 (3d Cir.1986); *see generally* 20 James Wm Moore & Hon. George C. Pratt, *Moore's Federal Practice* § 338.20 (3d ed.1997) (discussing Fed.R.App.P. 38 and standards for determining frivolousness of an appeal). Therefore, the Court need not address the question of whether the Third Circuit would adopt the practice of certifying an appeal of a denial of qualified immunity as frivolous. To this extent, the Plaintiffs' motion for reconsideration is denied.[5]

### 2. Waiver of Qualified Immunity

■ Finally, Plaintiffs have argued that Defendants have waived the defense of qualified immunity by "delaying so long in asserting that right," Plaintiffs' Letter–Brief at 17, an argument which they did not advance in their original brief in opposition to Defendants' motion for summary judgment. While the Court noted that Defendants' delay had, as a practical matter, forfeited benefits that the defense of qualified immunity afforded them, *Rouse III,* 987 F.Supp. at 313–14, in no way have Defendants forfeited two of the key benefits of the defense: the avoidance of a trial and of liability for money damages. First, Defendants properly and unambiguously asserted the defense in their Answer to the Second Amended Complaint. *See* Answer at p. 8 (dated Nov. 13, 1995); *see generally Gomez v. Toledo,* 446 U.S. 635, 100 S.Ct. 1920, 64 L.Ed.2d 572 (1980). Second, Defendants made the motion within the time limits for summary judgment motions set by Magistrate Judge Cavanaugh. *See* Scheduling Order (dated July 19, 1997).

Third and most important, the time at which Defendants raised the issue of qualified immunity does not approach the egregiously late motions in cases where a waiver was found or strongly considered. *See, e.g., Lord–Butcher v. City of Newport Beach,* 79

---

5. It should be noted that the practice of certifying frivolous appeals could be used to prevent defendants from unreasonably digging in their heels to avoid a trial. Thus, where there is a good faith claim to injunctive relief and, therefore, an inevitable trial, this practice could mitigate the potential harshness of the rule enunciated in *Acierno* and could allow the balancing approach to interlocutory appeals utilized in that case to be more nuanced. *See Acierno,* 40 F.3d at 609.

F.3d 1153, 1996 WL 111588 (9th Cir. Mar.13, 1996) (qualified immunity waived where not mentioned until close of defendant's case at trial); *Yates v. Cleveland,* 941 F.2d 444, 448–49 (6th Cir.1991) (declining to dispose of appeal on grounds of waiver, but noting that defendant did not raise issue of qualified immunity until days before trial); *Guzman–Rivera v. Rivera–Cruz,* 98 F.3d 664, 668 (1st Cir.1996) (holding that "defense of qualified immunity may be deemed waived if it is not raised in a diligent manner during the post-discovery, pre-trial phase," but not preventing defendant from raising defense on "summary judgment, regardless of whether it was raised prior to discovery").

Fourth, while the qualified immunity defense was raised in Defendants' motion in a shallow and perfunctory fashion, it was unambiguously raised. *See, e.g., Bakalis v. Golembeski,* 125 F.3d 576, 579 (7th Cir.1997) (finding waiver of qualified immunity on one basis where defense on this basis was abandoned); *Del Raine v. Carlson,* 77 F.3d 484, 1996 WL 47451, *14 (7th Cir. Feb. 1, 1996) (discussing waiver of qualified immunity where defendant failed to raise defense until third motion for summary judgment); *Blissett v. Coughlin,* 66 F.3d 531, 538–39 (2d Cir.1995) (qualified immunity defense waived where it was not subject of pretrial motions, mentioned in pretrial order or discussions with court, or subject of proposed jury instructions).

Perhaps anticipating that Plaintiffs would raise the waiver issue, Defendants have attempted to explain their litigation strategy. As an apparently *post hoc* rationalization for why their qualified immunity defense was raised so late in the day, Defendants note that Plaintiffs' claim of an Eighth Amendment violation was so "nebulous ... that [D]efendants could not ascertain without discovery what care [P]laintiffs were claiming was appropriate [sic]." Defendants' Reconsideration Brief at 25 n.*. Presuming that Defendants meant that they could not ascertain which care Plaintiffs were claiming was *inappropriate,* the Court finds this somewhat incredible. The Second Amended Complaint pled in relatively detailed fashion the aspects of medical care which Plaintiffs claim were inadequate and quite certainly could not be considered a "bare-bones" complaint. *See*

Second Amended Complaint ¶¶ 25–31 (dated Aug. 2, 1993). Given the evidence adduced by both Defendants and Plaintiffs in support of or in opposition to Defendants' motion for summary judgment, it does not appear that a great many surprises arose during discovery, at least in terms of the basic contours of Plaintiffs' claim. Plaintiffs' Second Amended Complaint was not so ambiguous that the defense of qualified immunity could not have been asserted before discovery began. *Cf. Pro v. Donatucci,* 81 F.3d 1283, 1286 n. 1 (3d Cir.1996) (discussing one type of ambiguity which prevents resolution of qualified immunity issue before discovery). Indeed, accepting Defendants' argument would mean that, because most complaints are more nebulous that Plaintiffs', qualified immunity would almost never be resolved before discovery.

Furthermore, while the Supreme Court in *Behrens* "acknowledge[d]," Defendants' Reconsideration Brief at 25 n.*, that the district "court denied [a] summary judgment motion, without prejudice, on the ground that it was premature given the lack of discovery," *Behrens,* 116 S.Ct. at 837, by no means did the Supreme Court endorse this procedure. Indeed, as I noted in *Rouse III,* the Supreme Court has held that "until the threshold immunity question is resolved, discovery should not be allowed." *Siegert,* 500 U.S. at 232–33; *see also Harlow,* 457 U.S. at 818 ("If the law at that time was not clearly established, an official could not reasonably be expected to anticipate subsequent legal developments, nor could he fairly be said to 'know' that the law forbade conduct not previously identified as unlawful. Until this threshold immunity question is resolved, discovery should not be allowed."); *Rouse III,* 987 F.Supp. 302, 313–14; *X–Men Sec., Inc. v. Pataki,* 983 F.Supp. 101, 119 (E.D.N.Y.1997) (discussing nature of "threshold immunity question").

Also, a "motion in lieu of an answer," Defendants' Reconsideration Brief at 25 n.*, presumably a *motion to dismiss for failure to state a claim,* is not the only procedural mechanism by which Defendants could have asserted their qualified immunity defense before discovery; a motion for summary judgment can be made by a defending party "at any time," Fed.R.Civ.P. 56(b), including before discovery, subject, of course, to the non-moving party's filing of affidavits pursuant to

Rule 56(f). Thus, while the Court finds Defendants' explanation of their litigation strategy incredible, these considerations do not compel a finding that the qualified immunity defense has been waived. Therefore, Defendants have not waived the defense of qualified immunity and, to this extent, Plaintiffs' motion for reargument is denied.

## IV. Conclusion

For the reasons set forth above, Defendants' motion for reconsideration will be denied. Plaintiffs' motion for reconsideration will be granted in part, and Defendants' motion for summary judgment as to Plaintiffs' claim under the ADA will be denied. Plaintiffs' motion for certification of Defendants' appeal as frivolous will be denied. Finally, the Court cannot find that the defense of qualified immunity has been waived and, to this extent, Plaintiffs' motion for reargument is denied.